# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

JOIE RAYSHAWN BELL,

      Petitioner,                Civil No. 5:13-CV-11212

                                 HONORABLE JOHN CORBETT O'MEARA

v.                              UNITED STATES DISTRICT JUDGE

CATHERINE BAUMAN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

Joie Rayshawn Bell, ("Petitioner"), confined at the Kinross Correctional Facility, in Kincheloe, Michigan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his convictions of first-degree felony murder, M.C.L.A. 750.316, felon in possession of a firearm (felon in possession), M.C.L.A. 750.224f, and possession of a firearm during the commission of a felony (felony-firearm), M.C.L.A. 750.227b. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

### I.  Background

Petitioner was convicted of the above offenses following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28

U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> Here, the evidence included that defendant knocked on the victim's door and, when the door was opened about a foot, defendant pushed into the room brandishing a gun while wearing a bandanna over his face. Defendant's friend, "Coach," then entered the house brandishing a gun and physically attacked the victim in the kitchen while defendant stood in the doorway with his gun aimed at the victim's girlfriend and their children, as well as a friend. After these people were ordered into a back bedroom, a gunshot was heard and then the victim came into the back bedroom covered in blood. A witness, who personally knew both defendant and Coach, saw them leaving the scene of the shooting on foot and then they entered into a vehicle and drove away. After his arrest, defendant admitted to going with Coach to the victim's house for the purpose of beating the victim up for selling drugs to one of Coach's customers. They both had guns.

*People v. Bell*, No. 305103, 2012 WL 4093757, at * 1-2 (Mich. Ct. App. Sept. 18, 2012).

Petitioner's conviction was affirmed. *Id., lv. den.* 493 Mich. 930 (2013).

Petitioner seeks habeas relief on seven grounds:

I. The prosecutor failed to present legally sufficient evidence that Appellant was guilty as an aider and abettor to felony murder.

II. Giving a flight instruction was plain error and denied Mr. Bell a fair trial, where the inference that Appellant fled from the house to avoid detection or because of consciousness of guilt.

III. Mr. Bell was denied his constitutional rights to a fair trial, confrontation and effective assistance of counsel, who failed to move for a mistrial after the officer in charge of the case stated hearsay that he received an anonymous tip implicating Mr. Bell from an unidentified unproduced informant.

IV. Due process requires dismissal of the charges, or at the minimum an evidentiary hearing, where the police acted in bad faith by failing to preserve known potentially exculpatory evidence, thus denying Mr. Bell his right to a fair trial.

V. Substantial prosecutorial misconduct denied Mr. Bell a fair trial.

2

VI. The judge denied Mr. Bell a fair and impartial trial when he manipulated the second degree murder instruction which had a substantial and injurious effect or influence on the jury's verdict.

VII. Mr. Bell was denied the effective assistance of counsel by his counsel's egregious and prejudicial errors.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

3

independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

### III. Discussion

**A. Claim # 1 . The sufficiency of the evidence claim.**

Petitioner first argues that the evidence was insufficient to establish his guilt as an aider and abettor of felony murder because there was insufficient evidence of malice.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the original). Circumstantial evidence alone is sufficient to support

4

a conviction, and it is not necessary for the evidence at trial to exclude every reasonable

hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir.

2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision

that rejects a sufficiency of the evidence claim simply because the federal court disagrees

with the state court's resolution of that claim.  Instead, a federal court may grant habeas

relief only if the state court decision was an objectively unreasonable application of the

*Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011).  "Because rational

people can sometimes disagree, the inevitable consequence of this settled law is that

judges will sometimes encounter convictions that they believe to be mistaken, but that

they must nonetheless uphold." *Id.*  For a federal habeas court reviewing the sufficiency

of evidence for a state court conviction, "the only question under *Jackson* is whether that

finding was so insupportable as to fall below the threshold of bare rationality." *Coleman*

*v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of
death or great bodily harm with knowledge that death or great bodily harm
is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission
of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F.3d 780, 789 (6th Cir. 2003)(citing *People v. Carines*, 460
Mich. 750, 759; 597 N.W.2d 130 (1999)).

The Michigan Supreme Court has indicated that "[A] jury can properly infer

5

malice from evidence that a defendant set in motion a force likely to cause death or great bodily harm." *People v. Aaron*, 409 Mich. 672, 729; 299 N.W.2d 304 (1980); *see also Carines,* 460 Mich. at 759 (internal citation omitted). "Malice may also be inferred from the use of a deadly weapon." *Carines,* 460 Mich. at 759.

To support a finding under Michigan law that a defendant aided and abetted in the commission of a crime, the prosecutor must show that:

> 1. the crime charged was committed by the defendant or some other person;
> 2. the defendant performed acts or gave encouragement that assisted the commission of the crime; and
> 3. the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *Carines*, 460 Mich. at 757-58).

Under Michigan law, to convict a defendant of felony murder under an aiding and abetting theory, the prosecutor must show that someone killed the victim during the underlying predicate felony, that the defendant assisted that person in killing the victim, and that the defendant either intended to commit the crime or he knew when he gave the assistance that the other person intended to commit the crime. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 858 (E.D. Mich. 2003)(citing *People v. Smielewski*, 235 Mich. App. 196, 207; 596 N.W. 2d 636, 642 (1999)).

In the present case, there was sufficient evidence for a rational trier of fact to conclude that the petitioner possessed the requisite malice required to support his

6

conviction for first-degree felony murder as an aider and abettor.  The evidence established that petitioner actively participated in the assaults while both he and his co-defendant were armed with firearms.

A number of cases have held that a defendant's participation in a criminal offense, while either he or his co-defendants were armed with a loaded firearm, manifested a wanton and reckless disregard that death or serious bodily injury could occur, to support a finding that the defendant acted with malice aforethought, so as to support a conviction for felony-murder on an aiding and abetting theory. *See Hill v. Hofbauer,* 337 F.3d 706, 719-20 (6th Cir. 2003)(intent for felony murder "can be inferred from the aider and abettor's knowledge that his cohort possesses a weapon."). *See also People v. Carines,* 460 Mich. at 759-60; *Harris v. Stovall,* 22 F. Supp. 2d 659, 667 (E.D. Mich. 1998)*; People v. Turner,* 213 Mich. App. 558, 572-73; 540 N. W. 2d 728 (1995)*;overruled in part on other grounds People v. Mass,* 464 Mich. 615; 628 N.W. 2d 540 (2001); *People v. Hart*, 161 Mich. App. 630, 635; 411 N.W. 2d 803 (1987); *Meade v. Lavigne ,* 265 F. Supp. 2d at 858-59. *See also Redmond v. Jackson,* 295 F. Supp. 2d 767, 774 (E.D. Mich. 2003)(petitioner not entitled to tolling of the AEDPA's statute of limitations on a claim that he was actually innocent of felony-murder, finding that petitioner's act of providing a firearm to be used in an armed robbery demonstrated a wanton and wilful disregard of the fact that a person could be killed or suffer great bodily harm during the course of the robbery).  When viewed in a light most favorable to the prosecution, the evidence established that petitioner acted with the requisite malice aforethought so as to support

7

his conviction for first-degree felony murder.  Petitioner is not entitled to habeas relief on his first claim.

**B.  Claims ## 2 and 6.  The jury instruction claims.**

The Court consolidates petitioner's second and sixth claims together for judicial clarity because they involve challenges to the jury instructions/state evidentiary law issues.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal.  The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned," and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977).  The challenged instruction must not be judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999).  Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009).  It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191.

In determining whether to grant habeas relief to a habeas petitioner based upon an erroneous jury instruction, the reviewing court must determine whether that instruction

8

had a substantial and injurious effect or influence on the jury's verdict. *See Hedgpeth v. Pulido,* 555 U.S. 57, 61-62 (2008); *California v. Ray,* 519 U.S. 2, 5 (1996).

In his second claim, petitioner alleges that he was denied his right to a fair trial when the trial court judge gave a jury instruction that petitioner fled from the house to avoid detection or because of consciousness of guilt.

The Michigan Court of Appeals found that the trial court did not abuse its discretion when it instructed the jury regarding petitioner's flight from the scene of the shooting, as follows:

> [T]he prosecution presented testimony from a witness who saw defendant and Coach leaving the scene of the shooting, through the backyard, in "a fast motion," but not running. They then entered into a black vehicle and drove away. This testimony leads to the logical inference that defendant wanted to leave the scene of the crime unseen and quickly, but that he did not want to attract attention to himself by running at full speed. Although defendant could have fled the scene for innocent reasons, the trial court properly allowed the jury to make this determination.

*Bell,* No. 305103, 2012 WL 4093757, * 2.

Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990)(internal citations omitted). Thus, the giving of a flight instruction did not violate petitioner's due process rights or render the trial fundamentally unfair, particularly in light of the fact that the flight instruction directed jurors to make their own determinations as to whether petitioner did, in fact, attempt to flee the scene and if so, what state of mind such flight evinced. *See Burton v. Renico,* 391 F. 3d 764, 778 (6th Cir. 2004); *see also U.S. v. Carter*, 236 F. 3d

777, 792, n. 11 (6th Cir. 2001)(not an abuse of discretion for the district court to give a flight instruction, though defendant may have had a reason to flee from officers other than guilt of the criminal charge, where the instruction stated that evidence of flight may or may not indicate a defendant's guilty conscience or intent to avoid punishment). Petitioner is not entitled to habeas relief on his second claim.

Petitioner's sixth claim alleges that he was denied a fair and impartial trial when the trial court judge manipulated the second degree murder instruction by instructing the jurors that multiple gunshots had been fired in this case.

The general rule in a criminal case is that a trial court may not direct a verdict of guilty. *Krzeminski v. Perini,* 614 F. 2d 121, 124 (6th Cir. 1980*); Schwachter v. United States*, 237 F.2d 640, 644 (6th Cir. 1956).  However, when a fact is not made an issue by a defendant in a criminal trial and it is shown without controversy by the evidence, a trial judge does not commit reversible error in stating that fact to the jury. *See Malone v. United States*, 238 F. 2d 851, 852 (6th Cir. 1956).

Dr. Leigh Hlavaty, from the Wayne County Medical Examiner's office, testified that "the cause of death was multiple gunshot wounds."  Hlavaty later specified, "two gunshot wounds." (Tr. 4/11/2011, pp. 13, 15).  The record supports the jury instruction.

Petitioner also alleges that an aiding and abetting instruction should not have been given.  The Michigan Court of Appeals found that the evidence supported this jury instruction. *Bell*, No. 305103, 2012 WL 4093757, at 4.  Petitioner admitted "to going with Coach to the victim's house for the purpose of beating the victim up for selling

10

drugs to one of Coach's customers." *Id.* at 1.

Federal courts are bound by the state courts' interpretation of their own laws. *See Mullaney v. Wilbur*, 421 U.S. 684, 690-91 1975). The nature of a particular jury instruction that is given is a matter of state law, and a federal court is not at liberty to grant a writ of habeas corpus simply because the federal court finds the state court's decision was incorrect under state law. *Newton v. Million*, 349 F.3d 873, 879 (6th Cir. 2003). Because the Michigan Court of Appeals found that Michigan law supported the giving of an aiding and abetting instruction, this Court must defer to that determination and cannot question it. *See Seymour v. Walker*, 224 F. 3d 542, 558 (6th Cir. 2000). Petitioner is not entitled to relief on his second and sixth claims.

### C.  Claim # 4.  The exculpatory evidence claim.

Petitioner next claims that he was denied due process when the police acted in bad faith by failing to preserve known potentially exculpatory evidence.

To prevail on his claim, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985). In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three

components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.

Officer David Hochstein testified that he confiscated a "computer that was hooked up to a surveillance recording system." and that "we took the recording device, but didn't take the cameras." (Tr. 4/11/2011, p. 39). Hochstein further testified "I think we were able to determine that it wasn't on by going through it at the scene, that it had been logged off before the incident was reported. So, it wasn't taken as far as evidentiary purposes based on that." (Tr. 4/11/2011, p. 41).

The failure of police to preserve evidence that is only potentially useful for a defendant is not a denial of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *See*

*Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(internal citations omitted).

The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id*

> The Michigan Court of Appeals found that:
>
> [D]efendant failed to demonstrate that the computer would have contained exculpatory surveillance footage considering that defendant admitted being at the scene of the crime, the victims identified defendant as being at the scene of the crime, and an eyewitness saw defendant fleeing from the scene of the crime. Accordingly, even if counsel should have obtained the computer, defendant cannot establish that he was deprived of a substantial defense or that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.

*Bell*, No. 305103, 2012 WL 4093757, * 5.

Inconclusive test results like the inconclusive results from the surveillance system are not exculpatory and thus do not need to be disclosed pursuant to *Brady. See Aldrich v. Bock,* 327 F. Supp. 2d 743, 755-57 (E.D. Mich. 2004); *see also Bell v. Coughlin,* 820 F.Supp. 780, 787 (S.D.N.Y. 1993)(FBI ballistics report not material where findings were mixed and allegedly exculpatory portions of tests were inconclusive*), Averhart v. State*, 614 N.E.2d 924, 928 (Ind.1993)(inconclusive gun shot residue tests not material under *Brady*). "Inconclusive test results do not have a tendency to make the existence of any consequential fact more or less probable and, therefore, the test results are not relevant." *Aldrich,* 327 F. Supp. 2d at 757 (internal quotation omitted). In light of the fact that the surveillance system

13

appeared logged off before the incident was reported and that petitioner admitted to being at the scene of the incident and petitioner told the police that he and "Coach" went to the victim's house to beat him up because he was selling drugs to one of "Coach's" customers, *see Bell*, * 3, petitioner is unable to show that this evidence would have exculpated him of the crime.  Petitioner is not entitled to relief on his fourth claim.

### D.  Claim # 5.  The prosecutorial misconduct claims.

Petitioner next claims that he was deprived of a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004)(citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45.  In order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his or her prosecutorial misconduct claim "was so lacking in justification that there was an error well understood

14

and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).

Petitioner first contends that the prosecutor improperly misstated the facts by arguing that both he and "Coach" beat Esse before Esse was shot.

Misrepresenting facts in evidence by a prosecutor can amount to substantial error because doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

The record reflects that petitioner told the police that he and "Coach" went to the victim's house to beat him up for selling drugs to one of "Coach's" customers. The prosecutor's remarks did not appear to be a misstatement of the facts. Furthermore, any slight misstatement was harmless being that the jury was instructed that arguments are not evidence. (Tr. 4/12/2011, p. 48.). Any prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. *See Hamblin v. Mitchell,* 354 F. 3d 482, 495 (6th Cir. 2003).

15

Petitioner also argues that the prosecutor committed misconduct by vouching for her witness during closing argument.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted).  "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted).  It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd,* 209 F. 3d at 537 and n. 43.  Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

The Michigan Court of Appeals rejected petitioner's claim, finding that the prosecutor's argument that petitioner became a suspect after the officer-in-charge received an anonymous tip did not improperly bolster that officer's credibility and

16

merely stated facts properly admitted into evidence. *Bell*, No. 305103, 2012 WL 4093757, * 4.

Even if this statement amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by this brief statement. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001). An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006). Petitioner is not entitled to habeas relief on this claim because the prosecutor's comment was brief and isolated. Furthermore, the jury was instructed that the lawyers' statements and arguments were not evidence. This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537. Petitioner is not entitled to relief on his fifth claim.

### E. Claims ## 3 and 7. The ineffective assistance of counsel claims.

Petitioner alleges eight grounds of ineffective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the

defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* Petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder,* 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington,* 562 U.S. at 112). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes,* 558 U.S. 15, 27 (2009).

On habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's

18

performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101.

Indeed, "because the *Strickland* standard is a general standard, a state court has even

more latitude to reasonably determine that a defendant has not satisfied that standard."

*Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to

the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland*

claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state

court conviction, "[A] state court must be granted a deference and latitude that are not in

operation when the case involves review under the *Strickland* standard

itself."*Harrington*, 562 U.S. at 101.  "Surmounting *Strickland's* high bar is never an easy

task." *Id.* at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

In Claim 3, Petitioner alleges that trial counsel was ineffective for failing to move

for a mistrial after the officer-in-charge testified that he received an anonymous tip

implicating petitioner.

The officer-in-charge was asked why petitioner's photo was placed in the photo

array.  The officer mentioned an anonymous phone call to which trial counsel objected

and which the trial court sustained.  The officer then proceeded to testify that petitioner

was not identified in the photo array.

The Michigan Court of Appeals found petitioner's right to confront the witness

was not infringed nor his counsel ineffective for failing to move for a mistrial because

the officer did not repeat the statement provided by the anonymous tip, the testimony

was not made to establish that petitioner committed the crimes, and the comment was provided only to explain why the officer included petitioner's photograph in the photo array.  Furthermore, the Court noted that the witness did not identify petitioner from the photo array. *Bell*, No. 305103, 2012 WL 4093757, * 2.  Trial counsel was not ineffective for failing to request a mistrial because the evidence was not improper nor prejudicial. *See e.g. Delaine v. United States*, 605 F. App'x 468, 471 (6th Cir. 2015)(counsel not ineffective for failing to request mistrial where there was no indication that the jury had been exposed to prejudicial material or that the petitioner's constitutional right to a fair trial was in jeopardy; petitioner's counsel may reasonably have chosen to continue the trial with the already empaneled jury rather than seek a mistrial and risk empaneling a less-favorable jury).

Petitioner alleges that trial counsel was ineffective by failing to object to the witnesses' identification testimony because it occurred after they saw petitioner's picture in a newspaper and on an internet site.  The Michigan Court of Appeals found that petitioner's claim did not arise by any state action, nor did he allege any state action. *Bell*, No. 305103, 2012 WL 4093757, * 4

"[T]he Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification." *Cameron v. Birkett,* 348 F. Supp. 2d 825, 843 (E.D. Mich. 2004).  Furthermore, "the Due Process Clause does not require a preliminary judicial inquiry into the reliability of an eyewitness identification when the identification was not

20

procured under unnecessarily suggestive circumstances arranged by law enforcement."
*Perry v. New Hampshire*, 132 S. Ct. 716, 730 (2012).

Due process protects the accused against the introduction of evidence which results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977).  In light of the fact that petitioner failed to show that he was subjected to a suggestive identification procedure by the state, counsel was not ineffective for failing to move for suppression of the pre-trial identifications. *See Perkins v. McKee,* 411 F. App'x. 822, 833 (6th Cir. 2011).  Trial counsel was not ineffective for failing to object to the witness identification because it did not occur as a result of an unduly suggestive identification procedure.

Petitioner alleges that trial counsel was ineffective by failing to request that an investigator check the computer hard drive, which was connected to a surveillance system at that home of the victim.

The record reflects that the surveillance system was logged off at the time of the incident, petitioner admitted being at the scene of the crime, the victims identified petitioner as being at the scene of the crime, and an eyewitness who knew petitioner saw him leave the scene of the crime.  Trial counsel was not ineffective by failing to request an investigator check the computer hard drive, which was logged off at the time of the incident, when petitioner would not have been exonerated from being at the scene of the crime.

Petitioner alleges that trial counsel failed to challenge Doctor Leigh Hlavaty's

21

testimony in regards to an autopsy report that he did not perform.

The Michigan Court of Appeals found that at the time of trial, the controlling precedent was that autopsy reports did not constitute testimonial evidence and did not implicate the Confrontation Clause. *Bell*, No. 305103, 2012 WL 4093757, * 5.

An attorney's failure to anticipate changes in the law cannot constitute ineffective assistance of counsel. *See Lucas v. O'Dea*, 179 F.3d 412, 420 (6th Cir.1999)("Only in a rare case will a court find ineffective assistance of counsel based upon a trial attorney's failure to make an objection that would have been overruled under the then-prevailing law."); *Brunson v. Higgins*, 708 F.2d 1353, 1356 (8th Cir.1983)(citations omitted)("The failure to anticipate a change in the law will not generally constitute ineffective assistance of counsel."). Because the law at the time of petitioner's trial did not consider an autopsy report to be testimonial evidence within the meaning of the Confrontation Clause, trial counsel was not ineffective for failing to object to Doctor Leigh Hlavaty reading the results of an autopsy performed by another pathologist.

Petitioner alleges that trial counsel was ineffective by stipulating that petitioner was convicted of a past crime and not allowed to possess a gun on the date of the crime.

Defense counsel did not render ineffective assistance by stipulating to petitioner's prior conviction regarding the felon in possession of a firearm charge, because petitioner has made no showing that this stipulated factor was not readily provable simply by reference to the public records. *U.S. v. Fuller,* 768 F. 2d 343, 347 (1st Cir. 1985). Furthermore, even if trial counsel was somehow deficient for stipulating to the prior

conviction, petitioner cannot show that he was prejudiced by counsel's stipulation, so as to support an ineffective assistance of counsel claim, in light of the substantial evidence against him in this case. Petitioner is not entitled to habeas relief, because the Michigan courts' rejection of his claim constituted a reasonable application of *Strickland. See Pearl v. Cason,* 219 F. Supp. 2d 820, 829 (E.D. Mich. 2002).

Petitioner alleges that trial counsel was ineffective by failing to object to the jury instructions given on second degree murder and aiding and abetting. This Court found in Claims 2 and 6 that there was record supported for the jury instructions given. Trial counsel is not ineffective for failing to object to jury instructions that are correct. *See Campbell v. Coyle,* 260 F. 3d 531, 557 (6th Cir. 2001). Because the instructions as given on the issues of second degree murder and aiding and abetting were adequate, counsel's failure to object was not objectively unreasonable, and petitioner cannot show that a different instruction would likely have changed the outcome of his trial as to entitle him to habeas relief on his claim. *See Jacobs v. Sherman,* 301 F. App'x. 463, 466-67 (6th Cir. 2008).

Petitioner alleges that trial counsel was ineffective by failing to object to police testimony that was based on a synopsis of petitioner's words and not a signed statement or recording. The Michigan Court of Appeals found that "the police need not record a defendant's statement even if the officer cannot remember everything the defendant said," and that "the testimony is admissible but weighs against the witness' credibility." *Bell*, No. 305103, 2012 WL 4093757, * 5. The testimony is admissible, therefore, trial

23

counsel was not ineffective by failing to object to its admission.

Moreover, to the extent that petitioner claims that trial counsel should have moved for suppression of his statement to the police, because the police failed to record the interrogation, he would not be entitled to relief.  Neither federal law nor Michigan law requires that police interrogations of suspects must be audio or videotaped. *See Brown v. McKee,* 231 F. App'x. 469, 475 (6th Cir. 2007); *Crenshaw v. Renico,* 261 F. Supp. 2d 826, 837 (E.D. Mich. 2003); *People v. Fikes,* 228 Mich. App. 178; 183-86; 577 N.W. 2d 903 (1998).  In light of the fact that the failure by the police to record petitioner's interrogation provided no basis to exclude his statement, counsel was not ineffective for failing to move for the suppression of the statement on this basis. *Brown,* 231 F. App'x. at 475.

Petitioner alleges that trial counsel was ineffective by failing to object to prosecutorial misconduct.  Because this Court has already determined that the prosecutor's comments did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *See Slagle v. Bagley,* 457 F. 3d 501, 528 (6th Cir. 2006).  Petitioner is not entitled to relief on his ineffective assistance of counsel claims.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a

constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.[1]

The Court will deny petitioner a certificate of appealability because he failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in*

---

[1] "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

*forma pauperis.*

s/John Corbett O'Meara
United States District Judge

Date: February 11, 2016

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, February 11, 2016, using the ECF system and/or ordinary mail.

s/William Barkholz
Case Manager

26